NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT


VINCENT HEAD,                                    )
                                                 )
            Appellant,                           )
                                                 )
v.                                               )          Case No. 2D16-3665
                                                 )
LAURENE SORENSEN, as the sole                    )
surviving trustee under a trust instrument       )
known as the Crepe Trust, dated                  )
February 28, 1972, and amended and               )
restated as of January 10, 2002;                 )
BAYFRONT TOWER CONDOMINIUM                       )
ASSOCIATION RESIDENTIAL, INC.;                   )
TROPICAL REALTY & INVESTMENTS,                   )
INC., d/b/a Berkshire Hathaway                   )
HomeServices Florida Properties Group;           )
and THOMAS E. HALLIS,                            )
                                                 )
            Appellees.                           )
                                                 )
_____  )

Opinion filed June 16, 2017.

Appeal from the Circuit Court for Pinellas
County; Pamela A.M. Campbell, Judge.

Adam B. Brouillet, Charles M. Harris, and
Marie Tomassi of Trenam, Kemker, Scharf,
Barkin, Frye, O'Neill & Mullis, P.A., St.
Petersburg, for Appellant.

Courtney L. Fernald and Leonard S.
Englander of Englander Fischer, St.
Petersburg, for Appellee Laurene Sorensen.

No appearance for remaining Appellees.

VILLANTI, Chief Judge.

Vincent Head appeals the final summary judgment entered in favor of Laurene Sorensen, as the Sole Surviving Trustee under a Trust Instrument known as the Crepe Trust, dated February 28, 1972, and amended and restated as of January 10, 2002 (Sorensen), in this case arising out of a contract for the purchase and sale of a condominium that is part of the Bayfront Tower Condominium Association Residential, Inc. (the Association). Because material questions of fact exist concerning whether Sorensen acted in good faith in attempting to procure the Association's approval of the contract, the trial court erred by entering final summary judgment in favor of Sorensen, and we must therefore reverse and remand for further proceedings.

After the death of her father, Sorensen sought to sell a condominium that he owned in Bayfront Tower in St. Petersburg. Sorensen, who lives in Idaho, obtained a referral to a local real estate agent, who prepared a market analysis of the condominium based on a number of factors, including its location and condition. Sorensen told the agent that she needed to sell the condominium quickly to obtain the cash necessary to pay some of the trust's expenses. Based on the condition of the condominium together with Sorensen's desire to expedite a sale, the agent recommended a listing price of $405,000. Sorensen agreed and listed the condominium for sale at $405,000.

Head had been looking at condominiums in downtown St. Petersburg for a period of time because he wanted to relocate there from Tampa. He learned of Sorensen's condominium through the listing agent, and he made a full-price offer to Sorensen the same day the condominium was listed. Sorensen accepted the offer, and

- 2 -

the listing on the Multiple Listing Service (MLS) website was updated to show that the condominium was sold with a contract price of $405,000. On May 31, 2015, both Head and Sorensen signed the contract for purchase and sale of the condominium at the listing price, and closing was set for July 13, 2015.

The day the MLS listing was updated to show the pending sale, Sorensen received a telephone call from another owner in the Bayfront Tower condominium. In that conversation, the owner told Sorensen that, in his opinion, the sales price for her father's condominium was too low and that she could have gotten much more for it. Shortly after that telephone call, Sorensen contacted her agent and requested that he cancel the contract with Head and cancel the MLS listing. Sorensen signed a proposed "Release and Cancellation of Contract" document attempting to cancel the sale, and that document was forwarded to Head on June 8, 2015. Head refused to sign the cancellation and indicated his intent to go forward with the purchase.

The contract for purchase and sale included a condominium rider that conditioned the sale of the condominium on the Association's approval of the buyer. Head timely filed his application with the Association, along with the requested supporting documents. Shortly thereafter, Sorensen contacted the Association and advised them that she did not want to go through with the sale. She told the Association that there were "legal issues" that might prevent the closing—although she did not identify what the alleged "legal issues" were—and she also suggested that the Association should closely investigate Head's ability to pay all of the costs associated with the condominium. When the Association subsequently expressed its intent to reject the contract on the basis of the low sales price, Sorensen stated that she had no

objection to this. The Association then sent written notification to Sorensen that it was rejecting the contract. Based on this rejection, Sorensen advised Head that she would not attend closing on July 13 because the sale could not be completed due to the Association's rejection of the contract.

In response, Head filed suit against Sorensen, alleging counts for injunctive relief, specific performance, and damages for breach of contract.[1] After extended discovery, Sorensen filed a motion for summary judgment, arguing that the contract had terminated under the title examination provision and therefore she was not liable to Head as a matter of law. The trial court held an extended hearing, and it granted final summary judgment in favor of Sorensen based on termination of the contract under both the title examination provision and the provision of the condominium rider that conditioned the sale on the Association's approval. Head then filed this appeal, raising three bases for reversal.

Head first contends that the trial court erred by entering final summary judgment in favor of Sorensen under the title examination provision of the contract, arguing that questions of fact existed concerning whether Sorensen had complied with her obligations under that provision. We agree.

Paragraph 18(A)(i) of the contract required that a title commitment "with legible copies of instruments listed as exceptions attached thereto" be delivered to Head no later than five days before closing. Paragraph 18(A)(ii) gave Head five days to

_____

[1]Head also alleged various counts against the Association; however, those claims were settled and the Association is not a party to this appeal. In addition, Sorensen filed a third-party complaint against Tropical Realty & Investments, Inc., and Thomas E. Hallis, the realtor who listed the condominium for sale. They have not appeared in this appeal.

examine the title commitment and notify Sorensen in writing of any defects that rendered the title unmarketable. The same paragraph gave Sorensen thirty days in which to cure any defects identified by Head after his review of the title commitment, and it contained an option to extend this cure period for an additional 120 days. The provision further stated that if Sorensen could not cure the identified defects "after reasonable diligent effort," the contract would terminate.

In her motion for summary judgment, Sorensen argued that the title commitment provided to Head listed the Association's approval of the buyer as a "defect" or condition that had to be cleared in order to close. Because of the Association's undisputed interest in this condominium, this "defect" or condition could not be waived by either Head or Sorensen. Sorensen argued that because the undisputed evidence showed that the Association rejected the contract in writing on June 30, 2015—more than five days prior to closing—the undisputed evidence proves that this title defect could not be cleared and that therefore the contract terminated by its own terms on June 30. She argued that these facts required the trial court to grant final summary judgment in her favor, and the trial court agreed.

The fallacy in this determination is that it presumes, contrary to some of the evidence, that Sorensen's contractual obligation to engage in a "reasonable diligent effort" occurred and that she acted in good faith to try to clear the identified title defect. We recognize that members of the Association's board all testified at deposition that they rejected the contract because the price was too low, in their opinions. However, each of them also testified that they had not seen the interior of the unit and did not know its condition. Further, Sorensen did not provide any of them with the market

analysis prepared by her agent upon which <u>she</u> relied in setting the sales price.[2]

Instead, Sorensen made the Association aware that she did not want to go through with

the sale, and in fact she further suggested to the Association that it should investigate

Head's finances because she did not know whether he could "carry" the costs of the

condominium.  These undisputed facts give rise to at least an inference that Sorensen

assisted in procuring the rejection from the Association.  At a minimum, these

undisputed facts tend to show that Sorensen had information that she could have easily

provided to the Association to justify the sales price if she had wanted to, and a

reasonable jury could find that if Sorensen had been acting in good faith, she would

have provided this information to the Association to encourage it to approve the

contract.  And while Sorensen was not required to engage in futile negotiations with the

Association to show reasonable diligence, <u>see</u> <u>Waksman Enters., Inc. v. Or. Props.,</u>

<u>Inc.</u>, 862 So. 2d 35, 43-44 (Fla. 2d DCA 2003), her actions in encouraging the

Association to reject the contract cannot satisfy her obligation to engage in a

"reasonable diligent effort," <u>see</u> <u>Bermont Lakes, LLC v. Rooney</u>, 980 So. 2d 580, 587

(Fla. 2d DCA 2008) (noting that what constitutes "reasonable diligence" is nearly always

a mixed question of law and fact that is not usually amenable to resolution on summary

judgment).  In light of these material questions of fact, Sorensen's motion for summary

judgment on the basis of the title examination provision should have been denied.

---

[2]There are indications in the record that the condominium, while well-maintained, had not been updated in any way since it was originally built out in the 1970s.  In addition, the new owner would be facing a $30,000 assessment for replacement of the exterior windows before the end of 2015.  The listing agent testified that it would take between $100,000 and $150,000 to bring the condominium up to the standards of other units in the building.

Second, Head contends that the trial court's alternate basis for entry of the final summary judgment—that the contract terminated automatically under the condominium rider when the Association rejected the contract—was also legally improper. We agree with this contention as well.[3]

As discussed in connection with the title commitment argument above, it is undisputed that the Association board members all testified at deposition that they rejected the contract because the price was too low. But faced with this objection to the sale, Sorensen did nothing to attempt in good faith to "sell the sale" to the Association. She did not offer to provide the Association with the market analysis prepared by her agent that supported the sales price.[4] She did not offer to show the board members the interior of the unit so they could see its condition. She did not discuss her intent to sell the condominium quickly so that she would have cash to support the trust's other expenses. Instead, she affirmatively advised the Association that she did not want to go

---

[3]In his motion for rehearing in the trial court and in the brief to this court, Head argued that Sorensen was not entitled to summary judgment on this basis because it had not been argued in her written motion for summary judgment, pointing to Florida Rule of Civil Procedure 1.510(c), which requires that a summary judgment motion "state with particularity the grounds on which it is based and the substantial matters of law to be argued." While Head is correct that the argument was not made in Sorensen's written motion, the record also shows that Head did not object to Sorensen's arguments on this basis at the summary judgment hearing and instead made substantive arguments in opposition to the trial court's ruling. Having waived the opportunity to object, Head waived the objection itself and could not raise it for the first time in his motion for rehearing in the trial court. Wong v. Crown Equip. Corp., 676 So. 2d 981, 981-92 (Fla. 3d DCA 1996); see also E.J. Assocs., Inc. v. John E. & Aliese Price Found., Inc., 515 So. 2d 763, 764 (Fla. 2d DCA 1987) ("Procedural irregularities to which no objection is made are waived.").

[4]In fact, Sorensen provided this market analysis to Head only after he filed a motion to compel its production during discovery and only after that motion was heard and granted by the trial court.

through with the sale, and she even suggested that Head was not financially sound enough to maintain the condominium. These undisputed facts give rise to an inference that Sorensen actively assisted in procuring the rejection from the Association by failing to present it with any evidence that might have persuaded it to approve the sale despite the "low" sales price. At a minimum, these facts tend to show that Sorensen had information that she could have easily provided to justify the sales price if she had wanted to act in compliance with her duty of good faith.

When there are questions of fact as to whether one party to a contract has acted in bad faith by helping to procure an event that would cause the contract to terminate, summary judgment in favor of that party is improper. See Paparone v. Lake Placid Holding Co., 438 So. 2d 155, 157 (Fla. 2d DCA 1983) (holding that "if one prevents or renders impossible the performance or occurrence of a condition precedent, upon which his liability is contingent, he cannot avail himself of its nonperformance" (citing Ballas v. Lake Weir Light & Water Co., 130 So. 421 (Fla. 1930)); see also Allied Fidelity Ins. Co. v. Scott, 516 So. 2d 315, 317 (Fla. 2d DCA 1987) (holding that the party cannot act so as to prevent another's performance and then rely on that nonperformance to avoid contractual obligations); N. Am. Van Lines v. Collyer, 616 So. 2d 177, 179 (Fla. 5th DCA 1993) ("[A] party who, by his own acts, prevents performance of a contract provision cannot take advantage of his own wrong."). Here, such questions do exist. Therefore, Sorensen was not entitled to summary judgment in her favor on the issue of whether the contract terminated under the condominium rider, and the trial court erred by entering final summary judgment in the face of such undisputed facts.

Finally, Head contends that the trial court erred in entering final summary judgment in favor of Sorensen on the breach of contract count. Because we are reversing the summary judgment on the other counts, summary judgment on this count must be reversed as well.

As the Fourth District explained in Wolofsky v. Waldron, 526 So. 2d 945, 946 (Fla. 4th DCA 1988):

> Where, as here, a contract for the sale of real property contains a provision permitting the seller to remedy any title defect within a period of time, failing which the seller's liability under the contract is limited to either conveying the title with the defect or refunding to the vendee all monies paid under the contract, at the option of the vendee, such limitation of liability does not protect the seller from the vendee's claim for damages for breach of the contract if the seller is shown to have acted in bad faith.

See also Sperling v. Davie, 41 So. 2d 318, 321 (Fla. 1949) (holding that if a breach is solely the result of bad faith on the part of the sellers in failing to clear a title defect, the buyer will not be limited to a refund of the deposit but may also recover damages). To limit the buyer to just the return of his deposit creates an incentive for the seller to dishonor the contract: "This seems to us to come perilously close to arguing that the sellers, after entering into a solemn agreement, could glibly dishonor it and restrict the buyer to regaining what was in practical effect already his, inasmuch as the transaction was not consummated and the sellers were therefore not entitled to the money." Romines v. Nobles, 55 So. 2d 563, 564 (Fla. 1951) (quoting Sperling, 41 So. 2d at 320)). Creating an incentive for a seller to breach the contract is anathema to the law.

Here, material questions of fact exist concerning whether Sorensen acted in good faith to attempt to clear the title defect by diligently seeking the Association's

- 9 -

approval of the contract. These questions of fact precluded summary judgment on the specific performance count, and they likewise precluded summary judgment on the breach of contract count.

For all of these reasons, we reverse the final summary judgment in favor of Sorensen on all counts of the amended complaint, and we remand for further proceedings.

Reversed and remanded for further proceedings.


BADALAMENTI, J., and SMITH, ANDREA, ASSOCIATE JUDGE, Concur.